**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-------------------------------------------------

FIRST NATIONAL ACCEPTANCE COMPANY,

                Plaintiff,

    -vs-                                   **6:12-CV-1622**

CITY OF UTICA, NEW YORK, and
JOHN GOSNELL,

                Defendants.

-------------------------------------------------

## DECISION and ORDER

Before the court are the motions for summary judgment of Plaintiff First National

Acceptance Company ("First National") and City of Utica, New York, in this matter

involving the demolition of a building on property in the City of Utica of which Plaintiff

was the mortgagee.  See dkt. #s 25, 26.  The parties have submitted briefing and

evidence on the issues raised in their motions.

## I.  BACKGROUND[1]

---

[1]Local Rule 7.1(a)(3) regulates summary judgment motions.  Under the Rule, a party moving for summary judgment is to file with that motion "a Statement of Material Facts" which "set[s] forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue."  L.R. 7.1(a)(3).  For every such fact, the moving party is to "set forth a specific citation to the record where the fact is established."  Id.  The rule emphasizes that "[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts shall result in denial of the motion." Id. (emphasis in original). Rule 7.1(a)(3) requires the opposing party to file a response to that statement.  Id.  The response must address each paragraph of the moving party's statement, citing to the record for any factual disputes that exist.  Id.  The Rule further provides that "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  Id. (emphasis in original). Defendant's response to the Plaintiff's statement largely accepts as true the facts alleged in the Plaintiff's statement.  The Court will note where there is disagreement.  At several points in responding, Defendant does not deny the facts alleged, but simply disputes whether those facts are material.  The Court finds

This case concerns the demolition of an apartment building on property owned by Defendant John Gosnell[2] in the City of Utica, New York. At the times relevant to this action, Defendant John Gosnell possessed fee simple title to the real property at issue, located at 2102 Highland Avenue, Utica, New York. (Plaintiff's Statement of Material Facts in Support of Motion for Summary Judgment ("Plaintiff's Statement") at ¶ 1). The property consisted of 9800 square feet. (Id. at ¶ 2). Improvements included a 4,895 square foot multiple dwelling. (Id.). The building contained eight apartments. (Id.).

On September 13, 1999, Gosnell granted Private Mortgage Investment Services, Inc. ("PMISI") a mortgage security interest in the property and building. (Id. at ¶ 3). The property and building were security for Gosnell's obligation to repay a $143,200.00 loan pursuant to a mortgage note issued that day. (Id.). PMISI recorded the mortgage and the underlying mortgage note in the Oneida County Clerk's office on September 15, 1999. (Id.). The mortgage obligated Gosnell to safeguard the property and the dwelling on the property from waste, damage and loss. (Id. at ¶ 4). Gosnell was required to make payments for as long as the debt remained unpaid. (Id.).

PMISI assigned its rights and interest in the mortgage to Plaintiff First National through two agreements. (Id. at ¶ 5). The first, a statement of collateral assignment of interest as security, was recorded with the Oneida County Clerk on May 1, 2001. (Id.).

_____

that such statements accept the existence of the facts, and the Court will accept them as true. The question of materiality is one to be determined in evaluating the motions.

[2]Gosnell was named as a Defendant in this matter. See Complt., dkt. #1. Gosnell did not answer the Complaint and no one entered an appearance for him in the matter. On May 21, 2013, Plaintiff filed a request for entry of default as to Gosnell. See dkt. # 14. The Clerk of Court entered the default the next day. See dkt. # 16.

The second, an assignment of seller[s]'s interest in real estate, which was recorded with the Oneida County Clerk on October 10, 2000.[3] (Id.). As a result of these agreements, First National assumed and owns all of PMISI's rights and interests in Gosnell's mortgage and the underlying mortgage note. (Id. at ¶ 6).

The City of Utica's official records demonstrate the City's knowledge of First Nation's mortgage on the Highland Avenue property. (Id. at ¶ 7). Among those records are a Notice of Redemption issued to First National as a payee on the mortgage of the Property on May 3, 2003. (Id.). The Tax Assessor's correspondence with First National on September 30, 2005 also demonstrates this knowledge. (Id.). Defendant argues that Plaintiff has produced no evidence that "any City of Utica official, officer or employee had knowledge of the mortgage at the time Plaintiff alleges its constitutional rights were violated." (Defendant's Statement of Material Facts ("Defendant's Statement"), dkt. # 29-2, at ¶ 7). Defendant does not cite to the record for this claim. (Id. at ¶ 7).

The building in question was a multiple dwelling as defined by N.Y. Multiple Dwelling Law § 7. (Plaintiff's Statement at ¶ 8). Defendant argues that it was not required to follow this statute in reference to that structure, and that the Multiple Dwelling Law is not relevant to this proceeding. (Defendant's Statement at ¶¶ 8-17). A proceeding seeking demolition of such a building, Plaintiff contends, is governed by the Multiple Dwelling Law. (Plaintiff's Statement at ¶ 8). Multiple Dwelling Law § 309 is

_____

[3]Defendant, without citing to any evidence of record, disputes that the City had any knowledge of this record. See Defendant's Statement of Material Facts, dkt. #29-2, at ¶ 6. The Court notes that Defendant does not dispute that the mortgage was actually recorded.

3

titled "Repairs, vacation and demolition of buildings." (Id. at ¶ 9). The chapter sets out the criteria and processes to be used by a municipality to determine whether the dwelling constituted an "untenanted hazard," and whether to order that the building be repaired or demolished. (Id.). The law provides that municipalities may take action to cause the repair or demolition of a multiple dwelling unit in two cases: (1) where the municipality has determined a structure to be a public nuisance that is "dangerous to life or health;" or (2) where the municipality has determined the structure to be an "untenanted hazard," defined as multiple dwelling that had been untenanted for at least 60 days and either is not "guarded continuously by a resident caretaker or has any exterior openings not sealed in a manner approved by the department and is afire hazard or in a condition dangerous or detrimental to human life, health or morals." (Id. at ¶ 10).

A municipality may order the owner of a multiple dwelling to remove a nuisance within twenty-one days, as long as the owner of the property has been provided notice and an opportunity to be heard. (Id. at ¶ 11). Section 309(1)(b) permits the municipality to seek an order from the New York Supreme Court compelling the property's owner to do so. (Id.). At no time relevant to this action did the City ever serve Gosnell with notice that the City had determined the building or any part of the building to be dangerous. (Id. at ¶ 12).

Section 309(2)(a) of the Multiple Dwelling Law defines an "untenanted hazard" as "a multiple dwelling . . . which has been untenanted for a period of 60 days or more and either is not guarded continuously by the department and is a fire hazard or in a condition dangerous or detrimental to human life." (Id. at ¶ 13). When municipalities

4

determine that a building is an "untenanted hazard," the municipality is required to provide written notice of that determination to the owners of the property, as well as any who hold a mortgage on that property "at the address of such owner appearing in the record of such mortgage in the office in which mortgages are registered in the county in which such premises are located." (Id. at ¶¶ 14-15). The law requires the notice to provide a description of the dwelling, the manner in which the building constituted an untenanted hazard, and to provide an order that the dwelling be demolished. (Id. at ¶ 16). The person named in the notice must certify in 10 days whether that person will carry out the order to demolish. (Id.). If the owner does not carry out the demolition within 21 days after service of notice, the law requires the municipality to serve a second notice on the owner and every mortgage holder. (Id. at ¶ 17). The municipality is to apply to the Supreme Court of the county in which the premises are located for an order declaring that an untenanted hazard exists and providing permission to demolish such premises. (Id. at ¶ 17). Only the Supreme Court can issue such orders, and only after the municipality had determined that all required notices and orders had been served on the building's owners and mortgage holders. (Id. at ¶ 18).

Utica's City Code also contained provisions addressing standards for housing and buildings and for enforcement of those standards at the relevant times. (Id. at ¶ 19).[4] Section 2-12-92 and 2-12-100 address buildings the City has determined are "unsafe buildings" as defined in the Building Code. (Id. at ¶ 20). These codes provide

---

[4]Plaintiff refers to these ordinances as part of the City's Charter. (Plaintiff's Statement at ¶ 19). Defendant concedes the existence of these ordinances, but notes that they are contained in the City Code, not Charter. (Defendant's Statement at ¶ 19). The Court will refer to the ordinances as part of the Code.

definitions of unsafe buildings and buildings unfit for human habitation.  (Id. at ¶ 21).  In addition, only the Commissioner of Codes may declare buildings unsafe.  (Id.).  The Commissioner can make such a determination only after receiving a written report from the Building Inspector stating that building suffers from one or more the following conditions: it is structurally unsound; badly dilapidated, decayed, vermin-infested or otherwise unfit for human habitation; lacks sufficient light, air sanitation facilities, or heat facilities; lacks sufficient facilities for egress in case of fire or panic; or that the building is vacant and open at the doors and windows.  (Id. at ¶ 22).

According to the ordinance in place at the relevant time, a finding by the Codes Commissioner that the building is unsafe creates a requirement that the owner be served with notice of that finding.  (Id. at ¶ 23).  The notice must contain: a description of the premises; a statement of the particular reasons for the unsafe nature of the building; an order that the owner begin repair or demolition within 30 days and that such work be completed within 60 days; the date, time and place of a hearing on the Commissioner's finding that the building was unsafe, which had to be held at least five days after the service of the notice; a warning that a failure to comply with the order to repair or demolish would lead the Commissioner to act to do so and then assess the costs on the owner through a special proceeding.  (Id.).  The City Code requires the notice to be served on the owner "or some one (1) of the owners, executors, legal representatives, agents, lessees, or any other person having a vested or contingent interests in the premises."  (Id. at ¶ 24).  Such service can come either personally or through registered mail, with a return receipt requested.  (Id.).  A copy of the notice is also to be filed with the Clerk of the Oneida County Clerk.  (Id.).  The Code does not

require that service of the Notice be made on mortgagees of the property in question. (Id. at ¶ 25).

The Codes Commissioner is also required to schedule and conduct a hearing on whether the building was unsafe. (Id. at ¶ 26). The building's owner or the owner's representative have a right to be present and call witnesses. (Id.). The Commissioner is required to make written findings of fact about whether the building is unsafe after this testimony. (Id.). Failure of the owner to appear at the hearing leads the Commissioner to "direct the repair or demolition of the building forthwith." (Id.). The City Charter permits the Corporation Counsel to apply to the Supreme Court for an order finding the building a public nuisance and directing that the building be repaired or demolished. (Id. at ¶ 27). Plaintiff alleges that the portions of the City Charter that permit the City to act against a dwelling without notifying the mortgagee on the property violate the Multiple Dwelling Law and are unenforceable. (Id. at ¶¶ 28-29). Defendant disputes this claim. (Defendant's Statement at ¶¶ 28-29).

On or about July 17, 2006, Edwina Bowens, a City housing inspector, conducted a "drive-by" inspection of the subject property while on a normal patrol.[5] (Plaintiff's Statement at ¶ 30). Bowens visually inspected the exterior of the building while she was seated in her car. (Id.). Bowens determined that the building was unoccupied, unsecured, and contained combustibles. (Id. at ¶ 31). She prepared a Notice and Order citing these conditions. (Id.). The document directed Gosnell, the owner, to remediate these conditions prior to a reinspection scheduled for July 24, 2006. (Id. at ¶

_____

[5]Defendant contends that the date of the first inspection was July 17, 2006, not July 24, 2007. (Defendant's Statement at ¶ 30).

31).   The Notice and Order warned that the cited violations could lead to fines.  (Id. at ¶ 32).  It did not state, however, that the building was unsafe, and did not order the building's repair or demolition.  (Id.).  Likewise, the warning did not state that a hearing had been scheduled to take place within five days.  (Id.).

Bowens mailed a copy of the Notice and Order to Gosnell, the property owner, by registered mail, return receipt requested.  (Id. at ¶ 33).  She did not, despite the requirements of the Building Code, post a copy on the property itself.  (Id.). She also failed to file a copy with the Oneida County Clerk, another requirement under the Code. (Id.).   Plaintiff First National did not receive a copy of the Notice and Order by any means.  (Id.).

Bowens conducted another similar inspection on July 24, 2006.  (Id. at ¶ 34). She determined that none of the conditions cited in the earlier notice had been corrected.  (Id.).  The next day, the Notice and Order sent to Gosnell was returned to Bowens as undeliverable.  (Id. at ¶ 35).  This action caused Bowens to conclude that Gosnell never got the notice, and she prepared a request for a new address from the Post Office.  (Id.).  Bowens, Plaintiff contends, has no recollection or record, however, that she received any response to this request or took any additional action to locate Gosnell and provide him with the Notice and Order.  (Id.).  Defendant asserts that an effort to locate a new address for Gosnell did not yield any results.  (Defendant's Statement at ¶ 35).

Bowen's claim that the building was unoccupied was based on her assumption that the building was vacant; she did nothing to verify that assumption.  (Plaintiff's Statement at ¶ 36).  Bowens testified that the building was unsecured because

buildings that were unoccupied were required by law to have the windows boarded shut and the doors either locked in place or boarded. (Id. at ¶ 37). Plaintiff argues that the Code did not require that the windows be boarded shut, and that Bowens' inspections gave her no basis to conclude that the doors could not be locked. (Id.). Defendant disputes this claim, arguing that the New York Fire Code § 311.2 required that the structure be boarded and secured. (Defendant's Statement at ¶ 37). Bowens also had no knowledge about what was inside the building, and thus no basis for concluding that combustibles were inside. (Plaintiff's Statement at ¶ 38).

The City took no further action on the property until January 30, 2008. (Id. at ¶ 39). On that date, Bowens inspected the property, getting out of her car and taking photographs from the street. (Id. at ¶ 40). Bowens then forwarded the Notice and Order to the City's legal department for an enforcement action. (Id. at ¶ 39). On February 7, 2008, the City filed a proceeding in the Utica City Court seeking an order to demolish the building. (Id. at ¶ 41). Defendant responds by emphasizing that the City sought an order for repair of the building; demolition would come only if the owner failed to respond. (Defendant's Statement at ¶ 41). Bowens provided an affidavit supporting this application. (Plaintiff's Statement at ¶ 41). The application, Plaintiff claims, contained misleading statements. (Id.). Bowens swore, for instance, that Gosnell had received an Oder directing him to repair or demolish the building from the City, even though Gosnell could not have received such an Order. (Id. at ¶ 42). Defendant insists Bowens' statement was accurate, since it stated only that her office had sent him the document. (Defendant's Statement at ¶ 42). She did not inform the Court that the

Order to Gosnell had not been received.  (Id. at ¶ 43).[6]

Bowens also failed to inform the Court that no contact had been made with Gosnell when she claimed that Gosnell had refused to cooperate with the City on the matter.  (Id. at ¶ 44).  She also claimed the building was uninhabitable, even though she had not been inside.  (Id. at ¶ 45).   Likewise, Bowens' claims that the building was unoccupied, unsecured and contained combustibles were not based on actual knowledge.  (Id. at ¶ 46).  Bowens mislead the Court about whether the City had provided Gosnell with the required notice.  (Id. at ¶ 47).  Such errors were repeated in the City's Verified Petition in the Court action.  (Id. at ¶ 48).  Defendant disputes these claims, but does not cite to any evidence of record.  Defendant describes the allegations as containing "a conclusory finding of fact outside the purview of Plaintiff's authority" which "fails to set forth any relevant material fact tending to prove that the City violated Plaintiff's constitutional rights."  (Defendant's Statement at ¶¶ 44-48).

The Uitca City Court issued an Order authorizing the City to demolish the building based on this information.  (Id. at ¶ 49).  The City never provided First National with a copy of the Notice and Order of July 17, 2006, the verified petition filed in the City Cout, the City Court's demolition order, or any notice of the City's intention or efforts to demolish the building.  (Id. at ¶ 50).  On May 6, 2008, the City's Legal Department

---

[6]Defendant contends that the affidavit Bowens filed "contained documentaton that noted the return of the Notice and Order by the US Postal Service and an attempt to perform a postal search for a new address for Gosnell" (Defendant's Statement at ¶ 43).  The document cited by the Defendant for this claim contains a return of service that mentions mailing the document, but the document does not contain all of the information that Defendant claims it does.  The document does not indicate, for instance, that Defendant's agent attempted to find a new address for Gosnell.  See Exh. D to Plaintiff's Response, dkt. # 29-2.

instructed the City's Engineering Department to demolish the building.  (Id. at ¶ 51).

Demolition took place in September 2008.  (Id.).  First National never received any

notice of the demolition.  (Id. at ¶ 51).

Though he made some payments late, Gosnell continued to make mortgage

payments until August 2011.  (Id. at ¶ 52).  At that point, Gosnell became unresponsive

to First National's efforts to communicate with him.  (Id.).  Even before that, on

February 13, 2011, First National hired a vender to visit the property and ascertain its

condition.  (Id. at ¶ 53).  On that date, Plaintiff first learned that the building on the

property had been demolished.  (Id. at ¶ 54).  Still, Gosnell continued to make

payments on the property and the circumstances of the demolition remained unknown

to Plaintiff.  (Id.).  On February 17, 2011, First National sent the City requests for

documents and information to determine how the demolition occurred.  (Id. at ¶ 54).

Thereafter, Plaintiff learned that the City had demolished the building.  (Id. at ¶ 55).

Gosnell stopped paying on his loan in July 2011.  (Id. at ¶ 56).  He cannot be

located.  (Id.).  The balance on his loan presently exceeds $140,000.  (Id.).  Demolition

of the building deprived First National of its security on the loan.  (Id. at ¶ 57).  First

National cannot forclose on the mortgage, and the mortage is now worthless.  (Id.).  If

the building had not been demolished, First National could have foreclosed on the

mortgage or accepted a deed in lieu of foreclosure and sold the property.  (Id. at ¶ 58).

Plaintiff could also have had a receiver appointed to make necessary repairs and lease

the property for the benefit of Plaintiff and as a means of satisfying the outstanding

balance on Gosnell's mortgage.  (Id.).  Without the building on the property, First

National is unable to obtain any effective remedy for Gosnell's default.  (Id. at 59).[7]

Plaintiff filed a complaint in this matter on October 30, 2012.  See dkt. #1.  The Complaint names the City of Utica and Gosnell as Defendants.  Plaintiff alleges that it had perfected an interest in the subject property of which the City was aware.  Despite this knowledge of Plaintiff's interest, the City caused the demolition of the apartment building, severely damaging Plaintiff's interest in that property.  Plaintiff's claim raises three causes of action against the Defendant City.  Plaintiff alleges that Defendant's conduct violated Plaintiff's procedural and substantive due process rights, and that the City must compensate Plaintiff for its attorneys fees in bringing the action.

## II.    LEGAL STANDARD

The parties have filed cross-motions for summary judgment.  It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

_____

[7]Defendant's Statement contains additional facts.  (See Defendant's Statement at ¶¶ 61-85).  Part of this additional statement concern the City's attempts to contact Gosnell before demolition of the property in 2008.  (See id. at ¶¶ 76-85).  This information is not material to the Court's decision in this action, as the question here is whether Plaintiff's rights as mortgagee were violated when the Defendant failed to give Plaintiff notice and an opportunity to be heard before demolishing a building in which Plaintiff had a significant financial stake.

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

## III.    ANALYSIS

For reasons which will become apparent, the Court will first address Plaintiff's motion for summary judgment.

### A.  Plaintiff's Motion

As a preliminary matter, Plaintiff brings its claims against the Defendant City of Uitca pursuant to 42 U.S.C. § 1983, alleging that the demolition of the apartment building without providing First National notice and an opportunity to be heard violated First National's procedural and substantive due process rights.   "To state a § 1983 claim, a plaintiff must establish that the defendant deprived him of a federal or constitutional right while acting under the color of state law."  Cox v. Warwick Valley

Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011). The question before the Court, therefore, is whether Defendants' conduct violated Plaintiff's constitutional right to due process.

### i.    Procedural Due Process

Plaintiff first seeks summary judgment on its claim that Defendant's action in demolishing the department building violated First National's procedural due process rights. Plaintiff argues that this claim must be granted because there is no dispute that the City failed to give Plaintiff notice or an opportunity to be heard before demolishing the apartment building. Defendant City of Utica responds by claiming that the ordinances in question provided the procedure that Plaintiff was due. Defendant also contends that no procedural due process violation occurred because there is no evidence that Defendant's failure to provide notice to Plaintiff was anything more than simple negligence. According to Defendant, a substantive due process violation could occur only if Plaintiff provided evidence of a "scheme to deprive" Plaintiff of notice of the proposed action.

Procedural due process concerns the procedures that a governmental entity must follow before depriving a person of their property. R. R. Vill. Ass'n v. Denver Sewer Corp., 826 F.2d 1197, 1203 (2d Cir. 1987). An "elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). In other words, "[d]ue process requires notice and the opportunity to be heard." Interboro Inst., Inc. v.

14

Foley, 985 F.2d 90, 93 (2d Cir. 1993). "[N]otice" must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. In determining whether notice was adequate, the Court "focuses on the reasonableness of the chosen means, not whether the affected persons actually received notice." Brody v. Village of Port Chester, 4343 F. 3d 121, 127 (2d Cir. 2005). An "opportunity to be heard must be 'at a meaningful time and in a meaningful manner.'" Karpova v. Snow, 497 F.3d 262, 270 (2d Cir. 2007) (quoting Mathews v. Eldrige, 424 U.S. 319, 333 (1976)).

Plaintiff did not have actual title to the property. Instead, Plaintiff was a mortgagee whose interest was duly recorded. The fact that Plaintiff was not the actual owner, however, does not answer the question of whether notice was due. Courts have found due process violations when the government fails "to notify an interested party." Luessenhop v. Clinton County, 466 F.3d 259, 269 (2d Cir. 2006). This is especially true in the context of tax sales of mortgaged property. Under those circumstances, because "a mortgagee has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 797 (1983). If the mortgagee's interest "is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service." Id. "Notice to the property owner, who is not in privity with his creditor and who has failed to take steps necessary to preserve his own property interest, cannot be expected to lead to actual notice to the mortgagee." Id. at 799.

The Supreme Court has therefore held that a duly recorded mortgage entitles

the mortgagee to notice and an opportunity to be heard before a tax sale can occur. <u>Adams</u> involved the tax sale of the property. In this case, however, the property itself was not sold. Instead, the building on the property was demolished because that building had been vacant for a number of years and the owner had done nothing to correct code violations. No tax sale was contemplated. Thus, an issue here is whether notice to the mortgagee was necessary.

The Court finds that Plaintiff was entitled to notice and an opportunity to be heard before Defendant demolished the building. Courts have concluded that an action that severely diminishes the value of mortgaged property entitles a mortgagee to notice and an opportunity to be heard. First, a "mortgagee possesses a legally protected property interest in the premises." <u>United States Trust Co. v. Town of Rampao</u>, 168 Misc. 2d 931, 934, 645 N.Y.S.2d 396, 398 (Rockland Cty Sup. Ct. 1996) . Moreover, "the demolition of an entire building on the property is not akin to a mere decline in property value, which would not support a Fourteenth Amendment deprivation claim[.]" <u>Id.</u> Instead, such destruction "constitutes a very substantial impairment of plaintiff's security interest" because the building likely "constituted a substantial and primary security for the mortgage[.]" <u>Id.</u> at 934-35. Notice is therefore necessary, and it is "no more burdensome . . . to determine the identity of the mortgagee and provide mail notice in connection with" the demolition "than it would have been to provide the same notice in a tax lien sale." <u>Id.</u> at 935; <u>see</u> <u>also</u>, <u>Equity One, Inc. v. City of Pittsburgh</u>, No. 2:03cv1816, 2006 U.S. Dist. LEXIS 34522, at *9-10 (W.D. Pa. May 30, 2006) (due process rights violated when mortgage holder was not provided notice of condemnation or demolition proceedings, even though the mortgage was recorded in the county

Recorder of Deeds office); Miller v. City of Philadelphia, No. 00-3263, 2001 U.S. Dist. LEXIS 15727, at * 6 (E.D. Pa. Aug. 23, 2001) (notice to mortgagee of pending demolition required by due process because "once the property has been demolished, the mortgagee's interest becomes completely nullified.").

Here, the building that was destroyed was a multi-unit rental property, the income from which could likely provide substantial resources by which the mortgage would have been satisfied. By destroying the building on the property, the Defendant seriously undermined the value of the mortgage that Plaintiff held on that property. Indeed, the record cited above establishes that the destruction of the building rendered the Plaintiff's interest in the property worthless. As such, the Court finds that Plaintiff was entitled to notice and an opportunity to be heard before the Defendant order demolition of the building. It is undisputed that Plaintiff recorded the mortgage as required by law. Defendant had an obligation to examine the property records before destroying the building and did not do so. Defendant failed to determine the identity of any mortgagees despite this obligation, and there can be no doubt that Plaintiff's constitutional right to notice and an opportunity to be heard was violated.[8]

---

[8]Defendant's conduct could not be excused by exigent circumstances. Courts have found that pre-deprivation process is not always possible, and "although notice and a predeprivation hearing are generally required, in certain circumstances, the lack of such predeprivation process will not offend the constitutional guarantee of due process, provided there is sufficient postdeprivation process." Cantanzaro v. Weiden, 188 F.3d 56, 61 (2d Cir. 1999). "'Either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process.'" Id. (quoting Parratt v. Taylor, 451 U.S. 527, 539 (1981)). The fact that the city waited years to demolish the vacant building and did not do so because of some danger or imminent collapse indicates that no exigent circumstances

Defendant does not really dispute that Plaintiff failed to receive notice and opportunity to be heard before the City ordered the demolition of the building. Instead, Defendant emphasizes that the City Code required that notice be given to one interested party before the property was destroyed, though not necessarily to a mortgagee. Defendant argues that the process available indicates that no claims of municipal liability for a constitutional violation could be raised from the City's conduct. Municipal liability is limited under Section 1983 by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). In that case, the Supreme Court found that municipal liability existed "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006). To prevail, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Commr's v. Brown, 520 U.S. 397, 403 (1997). "A government's official policy may be 'made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 142 (2d Cir. 1999) (quoting Monell, 436 U.S. at 694).

Defendant points to two provisions in the Utica Code that allegedly demonstrate that proper notice was provided. Section 2-12-46 establishes that when a violation of the building code allegedly occurs, "the head of the code enforcement agency shall give notice of violation or alleged violation to the person responsible for the violation." Exh. B to Defendant's Response in Opposition to Plaintiff's Motion, dkt. #26-3, at Sec. 2-12-

excuse the failure to provide due process before the deprivation.

46(1).  The Code further establishes that "[t]he notice shall be served upon the owner, agent, operator or occupant, as the case may require."  The Code provides an opportunity for a person notified in this manner to request a hearing.  <u>See</u> <u>Id.</u> at Sec. 2-12-71.  Defendant also identifies Section 2-12-96 of the City Code.  That provision concerns "unsafe buildings," which, after notice and a hearing, may be subject to an order for demolition.  <u>See</u> Exh. B at Sec. 2-12-98.   The Code requires notification when an inspector determines a building is unsafe.  <u>Id.</u> at Sec. 2-12-96.  The notice of the violation is to be served "[b]y personal service of a copy thereof upon the owner or some one (1) of the owners, executors, legal representatives, agents, lessees, or any other person having a vested or contingent interest in the premises as shown by the last preceding completed assessment roll of the city."  <u>Id.</u> at Sec. 2-12-96(a).  These provisions, Defendant insists, establish that the City had a policy that protected the Plaintiff's rights.  Any deprivation of due process was due to negligence of the City's agents, not a municipal policy or custom.

The provisions cited above, however, make clear that the official policy of the City, as expressed in its Code, did not require code enforcement officers to notify a mortgagee of a violation that could lead to the destruction of a significant asset on the property.  The cited language does not mandate that *all* persons with an interest in the property by notified, but simply that some person with an interest in the property be notified.  As explained above, failing to provide notice and an opportunity to be heard violated Plaintiff's procedural due process rights and injured Plaintiff.  That this failure to notify was caused by the City's duly-enacted laws indicates that the violation of Plaintiff's rights was a result of an official policy or custom.  <u>See e.g.</u>, <u>Connick v.</u>

Thompson, 141 S. Ct. 1350, 1359 (2011) ("Official municipal policy includes *the decisions of a government's lawmakers*, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.") (emphasis added); Miller, 2001 U.S. Dist. LEXIS 15727, at * 10 ("Here, it is the Philadelphia City Code itself which contains the policy of the City of requiring that notice be served only on the owner or agent of a structure before it is demolished and not on the mortgagee." Because Plaintiff was injured by this failure to notify by the City, the injury came pursuant to an official policy or custom.).[9] Defendant is thus subject to Monell liability. Plaintiff's motion for summary judgment will therefore be granted on the procedural due process claim. Defendant's motion will be denied in this respect.

### ii.    Substantive Due Process

Plaintiff also alleges that Defendant City of Utica's conduct violated First National's substantive due process rights. Plaintiff contends that the destruction of the apartment building, which provided the main value for the property, was arbitrary and lawless. Such conduct, Plaintiff insists, violates the right to substantive due process. Plaintiff argues that destroying the building without attempting to contact the mortgagee directly violated New York's Multiple Dwelling Law, as did bringing the action to

---

[9]The fact that there is evidence that Defendant may have contacted the property owner, which is cited by the Defendant as grounds for denying a violation of procedural due process, is immaterial. The question here is not whether the property owner's due process rights were violated, but whether Plaintiff's were. Defendant acknowledges that it never attempted to contact Plaintiff before demolishing the building. The ordinances of the City did not require that Plaintiff be contacted, and Plaintiff was therefore deprived of due process by a municipal policy or custom. That the City allegedly had more respect for Gosnell's rights is irrelevant to the City's conduct towards the Plaintiff.

authorize the destruction in City Court, rather than in the State Supreme Court. The City's inspector also ignored the requirements for determining whether the building was unsafe, and thus disregarded municipal requirements. Bowens, Plaintiff alleges, also engaged in arbitrary action when she declared the building unsafe. She did not actually inspect the building before making this finding and thus had no basis for her assertions. Such conduct, Plaintiff alleges, violated First National's substantive due process rights. Defendant argues that its conduct in failing to notify Plaintiff was at worst negligent and thus not sufficiently egregious to justify finding a violation of Plaintiff's substantive due process rights.

"'Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect' or 'ill-advised[.]'" Grillo v. Coughlin, 41 F.3d 53, 57 (2d Cir. 1994) (quoting Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994)). To demonstrate a substantive due process violation against a city, Plaintiff "must show that the City's regulation was an 'exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" SeaAir NY, Inc. v. City of New York, 250 F.3d 183, 187 (2d Cir. 2001) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).

Case law indicates that a mere failure to follow procedures dictated by law or ordinance is not in itself evidence of a substantive due process violation, but is simply incorrect or ill-advised conduct. In Cantanzaro v. Weiden, 188 F.3d 56 (2d Cir. 1999), the Plaintiffs had alleged a violation of their substantive due process rights after the city ordered the demolition of a building severely damaged by an automobile that ran into

the structure.  188 F.3d at 64.  The Court granted judgment for the Defendants on the substantive due process claim.  Id.  Noting that the Defendants feared a collapse of the damaged building, the Court found that "[t]here is nothing to suggest that Defendants did anything more than order the demolition of the Buildings, which had been severely damaged by an automobile accident, in order to protect the public safety."  Id.  Unless the Plaintiffs could produce "some evidence of a culpable state of mind on the part of the Defendants . . . no reasonable trier of fact could find this demolition to be arbitrary, conscience -shocking or otherwise constitutionally oppressive."  Id.  Finding no such evidence, the Court granted Defendants judgment on that claim.  Id.

The Court finds that Plaintiff has failed to produce evidence of a culpable state of mind that could lead a reasonable juror to conclude that Defendant violated Plaintiff's substantive due process rights.  All of the evidence cited by the Plaintiff indicates that Bowens and other City Officials made a decision that was incorrect or ill-advised.  Defendants sought relief from the wrong court, and the condition of the building may not have required demolition.  The evidence related above, however, does not indicate that this conduct was motivated by a desire to injure the Plaintiff or for some other improper purpose.  Plaintiff has not demonstrated a "culpable state of mind."  Cantanzaro, 188 F.3d at 64.  The evidence cited above simply shows that Defendant, after waiting for more than a year for a response by the owner of a vacant building that appeared to violate the housing code, eventually took action to destroy that property.  Failing to notify Plaintiff, as mortgagee, violated Plaintiff's procedural due process rights.  No evidence indicates, however, that the failure was motivated by anything other than an attempt to enforce the law.  Without more, the Court must find that Plaintiff cannot

22

maintain a substantive due process claim.  The Court will therefore deny the Plaintiff's motion on these grounds.  Moreover, since the Plaintiff has not produced evidence that could support that claim, the Court will grant the Defendant's motion for summary judgment in this respect.

### B.  Defendant's Motion

As explained above, the Court will grant the Plaintiff's motion for summary judgment on the procedural due process claim and deny Plaintiff's motion on the substantive due process claim.  Thus, the Court will grant the Defendant's motion to dismiss the substantive due process claim.

Defendant offers an additional argument that could cause the Court to find for the Plaintiff on the procedural due process claim.  The City also asserts that it is entitled to qualified immunity for the conduct about which Plaintiff complains.  "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Stephenson v. Doe, 332 F.3d 68, 76 (2d Cir. 2003) (quoting McCardle v. Haddad, 131 F.3d 43, 50 (2d Cir. 1997)).  Defendant argues that no evidence indicates that any official violated any clearly established right.

Defendant's argument here is misplaced.  Plaintiff sued the City, not an individual official.  Courts are clear that "a municipality may not assert qualified immunity based on its good faith belief that its actions or policies are constitutional[.]" Vives v. City of New York, 524 F.3d 346, 350 (2d Cir. 2008).  "[A] municipality is liable for even its good faith constitutional violations presuming that the municipality has a

policy that causes those violations." Id. (citing Owen v. City of Independence, 445 U.S. 650, 657 (1980)).  Here, the Court has found that the City's policy caused a violation of Plaintiff's rights.  Qualified immunity does not apply, and the Defendant's motion will be denied in this respect.  The Court will schedule a hearing to determine Plaintiff's damages at a later date.

## IV.  CONCLUSION

For the reasons stated above, the parties motions for summary judgment will be granted in part and denied in part.  The Plaintiff's motion will be granted with respect to Plaintiff's procedural due process claim and denied with respect to Plaintiff's substantive due process claim.  The Defendant's motion will be denied with respect to Plaintiff's procedural due process claim and granted with respect to Plaintiff's substantive due process claim.


SO ORDERED


Dated: June16 , 2014.



Thomas J. McAvoy
Senior, U.S. District Judge